# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CLAYTON E. CONSER,

        Plaintiff,

v.

        Case No. 17-2313

BRONSON CAMPBELL and CITY OF
VALLEY FALLS, KANSAS,

        Defendants.

## MEMORANDUM AND ORDER

Plaintiff Clayton E. Conser brings this § 1983 action, claiming that defendant Bronson Campbell, Chief of Police of Valley Falls, Kansas, violated plaintiff's Fourth Amendment rights when he tased and arrested plaintiff on the porch of plaintiff's house. Plaintiff originally brought companion claims against defendant Campbell and the City of Valley Falls for malicious prosecution. But plaintiff has since indicated that he wishes to withdraw these claims. Because the City of Valley Falls is effectively dismissed from the case, the court will refer only to the singular defendant Campbell throughout this Memorandum and Order.

Defendant Campbell filed a motion for summary judgment (Doc. 43). In that motion, defendant argues that he is entitled to summary judgment because the uncontroverted evidence shows that there was no constitutional violation. Alternatively, defendant seeks qualified immunity for his actions. For the following reasons, the court grants defendant's motion.

## I.    Factual Background

The factual background below is taken from the properly-cited evidence in the record. Plaintiff represented that some facts were disputed, but did not always specifically identify the evidence in the

-1-

record that shows a fact is in dispute. Many times, plaintiff cited generally to the body cam video of the arrest. The court has not considered any unsupported statements or statements supported only by a reference to the body cam video when the video does not show that the statement is accurate. *See* D. Kan. R. 56.1; *Cory v. Fahlstrom*, 212 F.R.D. 593, 595 (D. Kan. 2003).

In the early morning hours of June 7, 2015, plaintiff was intoxicated. Defendant Campbell was patrolling Valley Falls and drove in front of plaintiff's house. Brittany Kearney, who has lived with plaintiff for over ten years, was walking to the curb and crying in distress. Ms. Kearney told defendant Campbell that she wanted to take her three children (who are also plaintiff's children) to spend the night at a neighbor's house, but plaintiff was obstructing her.

During this encounter, defendant Campbell spoke with plaintiff for over twenty minutes. During this time, plaintiff called defendant Campbell a "tough guy," yelled at Ms. Kearney, and used foul language. Defendant Campbell de-escalated the situation such that Ms. Kearney was able to leave. As defendant Campbell was leaving the scene, he heard plaintiff shout, "I'm going to blow your f*ing head off." Plaintiff acknowledges that he might have said that, but he doesn't think he did because "If I were to have said that he probably would have arrested me." Shortly after defendant Campbell left the scene, plaintiff went to his truck and retrieved his rifle. He set it on the porch "[s]o I could sit there and drink beer."

Defendant Campbell drove back past plaintiff's residence later to make sure there were not further problems between plaintiff and Ms. Kearney. He observed a rifle leaning against a handrail on the porch, so he parked his vehicle and returned to the side of the house on foot. Defendant Campbell heard plaintiff working the bolt of the rifle.

Defendant Campbell then claims that he saw plaintiff holding the rifle and pointing it at a vehicle passing in front of the house. Plaintiff's counsel attempts to controvert this evidence by stating

-2-

without support that this claim "is a fabrication and attempt to cover up his misdeed." He then directs the court to plaintiff's deposition testimony and video evidence, stating, "The fact is when defendant Campbell came out of hiding, plaintiff was not holding the rifle, and plaintiff was not pointing the rifle at a vehicle passing in front of his residen[ce]. The fact is plaintiff had a can of beer in his hand, and the rifle was stood against the porch's rail on the other side where plaintiff sat." (Doc. 51, at 3.)

Plaintiff's response is insufficient to controvert defendant Campbell's statement that he observed plaintiff training a rifle on a passing car. Statements of counsel are not evidence. And neither plaintiff's deposition nor the video specifically controvert defendant Campbell's version of the events. In the deposition testimony cited by plaintiff, plaintiff discussed leaning the rifle against the rail and getting a beer. He did not, however, specifically deny pointing the rifle at a car. And he did not identify the timing of his actions. In other words, the testimony only establishes that plaintiff at one point leaned the rifle against the rail and got a beer. This event may have occurred before defendant Campbell even returned to plaintiff's house. The cited testimony does not controvert defendant Campbell's recollection of what he saw. Neither does the video. The video does not show plaintiff's actions before defendant Campbell's approach.

Defendant Campbell emerged from bushes on the side of the house and began giving plaintiff verbal commands to put the rifle down. After telling plaintiff three times to put the rifle down, defendant Campbell then told plaintiff to get in the yard once and to get on the ground twice before saying, "Sir, don't make me tase you. Get on the ground." In the video, plaintiff becomes visible sitting on the porch steps just before defendant Campbell told him to get on the ground the first time. Before then, the scene is too dark to discern where plaintiff is or what he is doing. Plaintiff was holding a beer—not the rifle—when he became visible in the video. He did not comply with defendant Campbell's instructions to leave the porch. After defendant Campbell directed plaintiff to get on the

ground the third time, and plaintiff still did not make any move to get off the porch, defendant Campbell tased plaintiff. He began telling plaintiff to put his hands behind his back. Again, plaintiff did not comply. Defendant Campbell tased plaintiff again and handcuffed plaintiff. Defendant Campbell then arrested plaintiff on suspicion of disorderly conduct and interference with a law enforcement officer—both misdemeanors—and took him to the Jefferson County Jail.

The prosecuting attorney ultimately charged plaintiff with attempted aggravated assault and obstructing an officer. At the preliminary hearing, Jefferson County Magistrate Judge Dennis Reiling dismissed the charges, finding that the State failed to prove its case. Judge Reiling also found that "[t]he evidence before the Court—there was reason for the officer to be concerned, so there was probable cause that initiated what transpired."

## II.     Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.    Discussion

The remaining claim in this case is that defendant Campbell arrested and seized plaintiff without probable cause, using excessive force to do so. According to plaintiff, this violated his Fourth Amendment rights. Plaintiff's brief focuses almost exclusively on the question of excessive force, but it appears that he may still intend to pursue his claim for lack of probable cause because he mentions it five times in the last two pages of his brief (but nowhere else in the brief). The court will first address probable cause and then turn to excessive force.

A. Probable Cause

A police officer acts within the Fourth Amendment when making a warrantless arrest when there is probable cause to believe that a criminal offense has been or is being committed. *United States v. Turner*, 553 F.3d 1337, 1344 (10th Cir. 2009) (citations omitted). For probable cause, the officer need not have facts sufficient for finding of guilt, but must act on "more than mere suspicion." *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998).

Here, defendant Campbell had deescalated a domestic dispute earlier in the night. He talked to plaintiff for over twenty minutes, and observed that plaintiff was intoxicated. He heard plaintiff shout about blowing someone's head off, and he drove back by the house and saw a rifle that had not been there earlier. He heard plaintiff working the bolt of the rifle, and believes that he saw plaintiff pointing the rifle at his neighbor's vehicle. Regardless of whether the charges were dismissed, Judge Reiling found that there was probable cause. Arguably, that finding is binding on this court, but defendant Campbell has not argued collateral estoppel, which is an affirmative defense. Fed. R. Civ. P. 8(c). This court also determines that the totality of the circumstances gave defendant Campbell probable cause to believe that a crime had been or was being committed. Summary judgment is warranted on plaintiff's claim for a Fourth Amendment violation based on lack of probable cause to arrest.

B. Excessive Force

"Claims that state actors used excessive force—deadly or not—in the course of a seizure are analyzed under the Fourth Amendment's reasonableness standard." *Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Objective reasonableness turns on the "facts and circumstances of each particular case," and a court must make such a determination "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see also Kingsley*

*v. Hendrickson*, 135 S. Ct. 2466, 2476 (2015) ("For these reasons, we have stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer."). Further, a court must engage in a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396.

The arrest of an individual suspected of breaking the law carries special considerations. The Supreme Court has reasoned that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. When judging reasonableness under the Fourth Amendment, courts must also recognize that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or the threat thereof to effect it." *Id.* at 396. Therefore, when evaluating a claim of excessive force, courts must keep in mind that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Id.* This also applies when an officer makes a reasonable judgment call—mistaken or not—as to the level of threat a suspect poses. *See Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (noting "even if an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed"). *Blossom v. Yarbrough*, 429 F.3d 963, 968 (10th Cir. 2005) (quoting *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001)) ("It is well settled that 'the reasonableness standard does not require that officers use alternative, less intrusive means' when confronted with a threat of serious bodily injury.")

The Supreme Court has identified a list of factors to consider when evaluating reasonableness in an excessive force claim: (1) "the severity of the crime at issue," (2) "whether the suspect poses an

immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The factors should be considered paying "careful attention to the facts and circumstances of each particular case." *Id.* In *Kingsley*, the Supreme Court expanded on the *Graham* factors, holding that the following considerations (in addition to others) may bear on the reasonableness of the force: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." 135 S. Ct. at 2472–73. A judgment as to whether an officer's conduct during an arrest constitutes excessive force requires a fact-intensive review of the specific circumstances of each case, considering the perspectives of the officers at the scene.

When defendant Campbell approached plaintiff for the second time that night, his uncontroverted observations were as follows:

- Plaintiff was intoxicated and had been yelling at his girlfriend.
- He believed he heard plaintiff shout, "I'm going to blow your f*ing head off" as he and Ms. Kearney left after the first encounter.
- He saw a rifle on the porch that had not been there earlier.
- He heard plaintiff working the bolt of the rifle.
- He believed that he saw plaintiff point a rifle at a passing car.
- Plaintiff refused repeated commands to get in the yard or on the ground.

Given these circumstances, it was objectively reasonable for defendant Campbell to believe that plaintiff was a threat to him and to the public. Defendant Campbell warned plaintiff before he tased him. He stopped tasing plaintiff once plaintiff was down, and employed the taser a second time

only when plaintiff did not put his hands behind his back after repeated directions to do so. Plaintiff's injury (if any) appears to be minimal, although he claims a momentary loss of consciousness when he fell on the porch after being tased. And although plaintiff was not attempting to run or fighting with defendant Campbell, he appeared visibly intoxicated, he was not obeying instructions, he was positioned within five-and-a-half feet of the rifle, and defendant Campbell was alone. Nearly all of the factors identified in *Graham* and *Kingsley* weigh in favor of a determination that the force used was objectively reasonable under the circumstances.

Plaintiff focuses on two facts in attempting to show that the use of force was unreasonable. First, plaintiff states that defendant Campbell did not identify himself as law enforcement. Second, plaintiff argues that the severity of the offense indicates that use of the taser was excessive. Plaintiff is correct: the video does not show that defendant Campbell identified himself as law enforcement. But this does not impact the objective reasonableness of defendant Campbell's actions. He had just talked with plaintiff for over twenty minutes. While defendant Campbell's failure to identify himself as law enforcement may have resulted in dismissal of the charge for obstructing an officer, it does not render unreasonable the use of a taser under the circumstances. It is only one factor to consider, along with the others identified above.

As for the severity of the offense, plaintiff cites *Fisher v. City of Las Cruces* for the proposition that "commission of a petty misdemeanor weighs in favor of using minimal, if any, force." 584 F.3d 888 (10th Cir. 2009). In *Fisher*, the officers forcibly handcuffed a severely injured subject with visible self-inflicted gunshot wounds to his stomach and bicep. *Id* at 892. He had already been controlled and frisked, and the firearm had already been removed. *Id.* The court noted that the plaintiff had committed a "petty misdemeanor," the "least serious of the three classes of state criminal offenses" in New Mexico. *Id*. at 895 (finding that the "seriousness of the offense" factor weighed in the plaintiff's

favor). Likewise, here, plaintiff was arrested on suspicion of misdemeanors. But plaintiff was not compliant, he had not been frisked, and he still had access to his firearm. This case is not like *Fisher*. In any event, the severity of the offense factor may weigh in plaintiff's favor here, but it does not outweigh the other *Graham* and *Kingsley* factors.

For all of the above reasons, the court determines that the uncontroverted facts show that defendant Campbell's actions were objectively reasonable under the circumstances. There is no issue of fact for the jury whether he used unconstitutional force, and he is entitled to summary judgment. The court need not address the question of qualified immunity.

**IT IS THEREFORE ORDERED** that defendant Campbell's motion for summary judgment (Doc. 44) is granted.

**IT IS FURTHER ORDERED** that the City of Valley Falls, Kansas is voluntarily dismissed from the case by plaintiff.

The case is closed and the Clerk of Court is directed to enter judgment in favor of defendant Campbell and against plaintiff.

Dated this 4th day of September, 2018, at Kansas City, Kansas.

                                          **s/ Carlos Murguia**
                                          **CARLOS MURGUIA**
                                          **United States District Judge**